José Lugo, demandante y apelante *v.* Self Auto Corporation, representada por su *manager* Luis M. Pagán, demandada y apelada.

Núm. 7203.—*Sometido:* Abril 9, 1937. *Resuelto:* Julio 7, 1937.

*Pascasio Fajardo Martínez,* abogado del apelante; *Emilio S. Belaval,* abogado de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Éste es un caso sobre daños y perjuicios sufridos a consecuencia de un accidente de automóvil que se falló en contra del demandante por no haberse demostrado a juicio de la corte de distrito que exista entre las partes el nexo jurídico que se alegó que existía y sin el cual no viene la demandada obligada a responder de los daños y perjuicios que sufriera el demandante.

La conclusión de la corte se basó en el resultado de la prueba que expuso en su relación del caso y opinión como sigue:

"Del conjunto de la prueba practicada en el acto de la vista esta corte estima satisfactoriamente probados los actos de negligencia del *chauffeur* que guiaba el vehículo en cuestión en los momentos del accidente y que como consecuencia de esa negligencia sucedió el acci-

dente, así como las lesiones recibidas por el demandante que se especifican en la demanda.

"Igualmente estima probado esta corte que la entidad demandada no es una empresa que se dedica a porteador público de pasajeros y estima igualmente probado satisfactoriamente que el *chauffeur* que guiaba el automóvil en cuestión en los momentos del accidente no era empleado como tal *chauffeur* de la demandada, ni estaba bajo las órdenes de la misma."

No conforme el demandante, apeló. Señala en su alegato la comisión de ocho errores. Los cinco primeros giran alrededor de si es o no aplicable a este caso la doctrina de *respondeat superior,* el sexto y el séptimo versan sobre admisión de evidencia y el octavo se refiere a la imposición de las costas. Tras un estudio cuidadoso de los hechos y la ley sólo creemos que se cometió el octavo.

■■ El primer testigo que declaró fué el demandante José Lugo. Dijo que en diciembre de 1930 regresó de los Estados Unidos y al desembarcar, en uno de los muelles de San Juan, encontró a Daniel Morales con un automóvil de cinco pasajeros, tablilla P–2351, esto es, a su juicio, de servicio público, y contrató con él para que lo condujera a Mayagüez por la suma de trece dólares; que por el camino Morales venía a velocidad exagerada y le llamó la atención para que no continuara así: que una vez voló el sombrero de su señora y al pegar los frenos para parar a recogerlo, no pudo hacerlo hasta cuarenta o cincuenta metros "debido a la velocidad que traía y a que los frenos estaban en malas condiciones"; que Morales se moderó un poco pero después volvió a correr ligero y como a tres kilómetros de Aguadilla al llegar a una curva se deslizó y chocó con un árbol recibiendo el declarante varias heridas.

El final de su declaración copiada textualmente es así:

"Que arrendó el automóvil a Daniel Morales y que dicho Daniel Morales en el muelle de San Juan le preguntó que para dónde iba y al decirle que para Mayagüez, le brindó el carro para traerlo y entonces trataron; que pagó al llegar a Mayagüez trece *dollars* por el viaje y un *dollar* más de propina. Que no contrató el carro con

la Self Auto Corporation y lo hizo con el *chauffeur*. Que estaba parado con su carro frente al muelle cuando desembarcó de su viaje de los Estados Unidos, en cuyo momento el *chauffeur* Morales le ofreció el carro para trasladarlo con la familia y equipaje."

Luego declararon Rosa M. de Lugo, el doctor Francisco J. Blasini y el abogado Gilberto López de Victoria. La primera corrobora a su esposo, el demandante, el segundo curó las heridas de éste que describe y el tercero reconoce dos cartas, una que dirigió a Luis M. Pagán, *manager* de la demandada, sobre la reclamación del demandante y otra que contiene la contestación de la demandada por su *manager*.

Además de esas dos cartas introdujo el demandante como prueba documental una certificación del Comisionado del Interior demostrativa de que el auto P–2351 se encontraba inscrito a la fecha del accidente a nombre de la demandada.

No negó ésta que fuera la dueña del auto, al contrario, aceptó que lo era. Su defensa consistió en alegar que lo arrendó a Morales y que Morales no era su agente. Para probarlo presentó en el juicio una certificación de una de sus cláusulas de incorporación, el contrato de arrendamiento y las declaraciones de Pagán y Morales.

La certificación está expedida por el Secretario Ejecutivo de Puerto Rico y tiende a acreditar el hecho de que entre las cláusulas de incorporación de la demandada, figura la siguiente:

"IV. Que el objeto para el cual dicha corporación se organiza es el siguiente: La compra y venta de automóviles y sus accesorios; arrendamiento de los mismos para transporte privado; establecimientos de talleres para reparaciones y pinturas de automóviles; explotar el negocio de petróleo y sus derivados y compra de terrenos y edificios para los negocios de la Compañía."

La Corte admitió el documento con la oposición del demandante basada en que la certificación no era completa y en que estaba en contradicción con el acto realizado por la propia demandada sacando tablillas de servicio público para su auto.

Hemos examinado la certificación y a nuestro juicio contiene todas las formalidades externas exigidas por la ley. No cita el apelante ley alguna o jurisprudencia que a nuestro juicio impidan a un funcionario que tenga bajo su custodia un documento el expedir copia certificada literal de cierta parte del mismo. Lo que sucederá será que tal copia demostrará únicamente la existencia de la parte del documento que se transcriba, dejando abierta a la duda o a la demostración por la parte contraria la existencia de alguna otra parte del propio documento que contradiga, modifique, o explique la transcrita.

El otro motivo de oposición tampoco estuvo bien fundado. Iba al peso de la prueba y la corte se encontraba en el momento de su admisión. Además aunque la corte hubiera estado obligada a fijar en tal momento todo el alcance de la certificación del Comisionado del Interior ya admitida y el de la certificación del Secretario Ejecutivo que se presentaba para su admisión, no hubiera errado al admitir la última pues el impedimento que alega el apelante no existía en realidad de verdad como veremos luego.

■ También objetó el apelante la admisión del contrato de arrendamiento, por tratarse de un documento privado que no podía perjudicarle por ser él un tercero.

El contrato fué introducido en evidencia después de haber sido reconocido por Luis M. Pagán como el celebrado entre la demandada y Morales. También Morales lo reconoció después. Sujeto al crédito que a la corte merecieran esas dos declaraciones, el documento era admisible. No hubo error.

■ Ahora, partiendo de la base de la prueba admitida y del entero crédito que a ella dió la corte sentenciadora sin que se haya demostrado que existiera motivo justificado alguno para que actuara de otro modo, nos encontramos con que la demandada que es una corporación dedicada entre otras cosas al arrendamiento de automóviles para transporte privado, arrendó a Daniel Morales con anterioridad al día del accidente el automóvil de que se trata en este caso que

tenía con tablillas que lo clasificaban como público, mediante el precio de tres dólares diarios; y que Morales, en posesión del auto arrendado, contrató directamente con el demandante el viaje a Mayagüez, sin que el demandante inquiriera si era dueño, arrendatario, o empleado del dueño del automóvil.

Ocurrido el accidente a virtud de la negligencia de Morales en el manejo del auto ¿está obligada a responder de los daños y perjuicios causados la dueña del mismo, o sea la Self-Auto Corporation, que es la única demandada en este pleito?

El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado, ordena el artículo 1802 del Código Civil, ed. 1930, y seguidamente el 1803 prescribe que la obligación que impone el artículo anterior, es exigible, no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder, especificando algunos casos entre los cuales se encuentra el de los dueños o directores de un establecimiento o empresa respecto de los perjuicios causados por sus dependientes en el servicio de los ramos en que los tuvieren empleados, o con ocasión de sus funciones.

¿Cae este caso dentro del alcance de esa ley? A nuestro juicio no cae porque Morales no era un empleado o dependiente de la demandada, sino una persona a quien la demandada arrendó su automóvil. Obtenida la posesión del auto por Morales a virtud del arriendo y habiendo contratado el demandante con él directamente su transporte a Mayagüez, sólo surgen de tal contrato obligaciones entre Morales y el demandante.

Es cierto que el automóvil formaba parte de una empresa dedicada al arrendamiento de automóviles para transporte privado y que fué en efecto arrendado, pero también lo es que no lo fué al demandante para conducirlo a Mayagüez sino a Morales para usarlo para transporte privado.

▆ Del hecho de que la demandada hubiera sacado para su auto tablillas públicas, deduce el demandante que la de-

mandada, contrario a lo que expresa una de sus cláusulas de incorporación, no se dedicaba al transporte privado si que era una porteadora pública, pero a nuestro juicio tal hecho que no puede negarse que complica la resolución del problema, no tiene ese alcance.

Es cierto que la sección 1 de la Ley núm. 55 de 1921, Leyes de 1921, p. 423, prescribe que:

"Por 'Automóvil de servicio público,' para los efectos de esta Ley, se considerará todo vehículo de motor que mediante retribución o pago se dedique a la conducción de pasajeros, mercancías o materiales de cualquier clase, y dichos vehículos no podrán traficar sin pagar los derechos adicionales establecidos más adelante en esta Ley, para automóviles que actúen como porteadores públicos."

Pero no puede concluirse a nuestro juicio que por el hecho de que la demandada a fin de poder arrendar su automóvil para ser usado por el arrendatario para el transporte privado de pasajeros, pagara los derechos adicionales establecidos por la ley para los automóviles que actúan como porteadores públicos, quedara constituída en una compañía de servicio público para el transporte de pasajeros mediante paga. Su negocio era el de arrendar el auto para ser usado por el arrendatario en la forma que quisiere y pudiere, no el de transportar pasajeros.

Además de la Ley núm. 55 de 1921 que se ha citado, hay que considerar otra, la núm. 70 de 1917, definiendo las compañías de servicio público, etc., Leyes de 1917, Vol. II, pág. 433, que define la frase "porteador público" como incluyendo a toda persona natural o jurídica dedicada por lucro al transporte de pasajeros, o carga, o de ambas cosas en Puerto Rico, por cualquier medio de locomoción, y el Reglamento sobre vehículos de motor de la Comisión de Servicio Público aprobado el 24 de mayo de 1927 cuya regla primera exige para que exista la condición de porteador público que los vehículos usados tengan una capacidad para más de siete pasajeros.

En Puerto Rico para dedicarse al transporte público re-

gular de pasajeros mediante paga hay que obtener una franquicia de la Comisión de Servicio Público y cumplir con otras exigencias de la ley y de los reglamentos de la Comisión, y parece que existen además otros automóviles que mediante el pago de los derechos necesarios para obtener tablillas públicas se dedican a transportar pasajeros de cuando en cuando, sin que tengan que obtener autorización alguna de la Comisión, conociéndose esta clase de negocio como de transporte privado. Y es entre éstos que corresponde clasificar el automóvil de la demandada en este caso en manos del arrendatario del mismo Daniel Morales.

La jurisprudencia que cita el apelante no es aplicable. Se refiere a empresas dedicadas al transporte de pasajeros o carga mediante sus propios empleados, no a empresas dedicadas al arriendo del vehículo solamente para ser usado por el arrendatario personalmente o por medio de sus dependientes o empleados.

Por el contrario hay un caso citado por la parte apelada, que presenta una situación semejante a la que surge de los hechos de éste. Nos referimos al de *Atkins* v. *Points,* 88 So. 231, de la Corte Suprema de Louisiana, en el que, copiando del resumen, se estableció la siguiente doctrina:

"Cuando el dueño cede en arrendamiento vehículos de motor a chóferes y éstos pagan al primero determinada suma por día y usan los vehículos para sus propios fines, el dueño no es responsable de los daños y perjuicios ocasionados a un tercero por razón de la negligencia del chófer, puesto que no existe una relación de patrono y empleado que haga aplicable la doctrina de *respondeat superior.*"

Insiste el apelante en que la responsabilidad de la demandada siempre surgiría porque el accidente se debió no sólo a la negligencia del chófer si que al mal estado de los frenos, como, según él, declaró probado la corte sentenciadora.

Hemos examinado cuidadosamente toda la relación del caso y opinión y no creemos que pueda concluirse a virtud de lo en ella expresado que el juez sentenciador declaró pro-

bado que los frenos del automóvil estaban en malas condi-ciones. La atención de la corte estuvo fija en la negligencia del chófer únicamente. Y examinando por nosotros mismos la evidencia del demandante sobre tal extremo, no nos parece suficiente. Además el auto había sido arrendado con más de un mes de anterioridad a la fecha del accidente.

Quizás este caso revele una situación que deba corregirse. Quizás ese llamado transporte privado deba regularse de tal modo que no se realice por personas que luego resulten irresponsables, mediante la exigencia de alguna fianza, seguro o penalidad. Tal vez deba exigirse alguna garantía a las propias personas o empresas que se dediquen al negocio de arrendar automóviles. Pero tal como se encuentra la ley, bajo las circunstancias concurrentes nos vemos obligados a resolver que la corte sentenciadora estuvo en lo cierto al declarar que no existía nexo jurídico alguno entre la demandada y el demandante a los efectos del pago de los daños y perjuicios reclamados.

Ahora bien, nos parece que no debió la corte imponer las costas al demandante. La cuestión es nueva y dudosa. No hubo temeridad, especialmente tomando en consideración la contestación que la demandada dió a la cárta del abogado del demandante en la que sostiene su falta de responsabilidad pero basada en la voluntad del demandante que lo había relevado de ella y en que el incidente había sido casual no insinuando siquiera la defensa que luego adujo y prosperó.

*En tal virtud, debe modificarse la sentencia apelada eliminando la condena de costas, sustituyéndola por la de "sin especial condenación de costas" y así modificada, confirmarse.*

El Juez Asociado Señor Córdova Dávila no intervino.